UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ERIK A. AHLGREN, *in his capacity as assignee in the assignment for the benefit of creditors of Ashby Farmers Co-Operative Elevator Company*,<br><br>Plaintiff,<br><br>v.<br><br>SAMUEL FEJES and FEJES GUIDE SERVICES, LTD.,<br><br>Defendants. | Civil No. 19-2385 (JRT/LIB)<br><br>**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |

Erik A. Ahlgren, **AHLGREN LAW OFFICE, PLLC,** 220 W. Washington Ave, Suite 105, Fergus Falls, MN 56537, for plaintiff.

Mark G. Schroeder, **TAFT STETTINIUS & HOLLISTER LLP,** 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402; and William H. Ingaldson, **INGALDSON FITZGERALD, PC,** 813 West Third Ave, Anchorage, AK 99501, for defendants.

From 2003–2018 Jerry Hennessey, then the General Manager of the Ashby Farmers Co-Operative Elevator Company (the "Co-Op"), misappropriated $5.4 million from the Co-Op by writing Co-Op checks to himself or directly to third parties for his personal benefit. Upon discovery of Hennessey's fraud in 2018, the Co-Op ceased operations and appointed an Assignee, Plaintiff Erik Ahlgren, to recover the misappropriated funds. Ahlgren brought this fraud and unjust enrichment action against

Defendants Sam Fejes and Fejes Guide Services, Ltd. ("FGS"), seeking to void unauthorized payments that Hennessey allegedly paid to Defendants for Alaskan hunting trips.

Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) arguing that the Court lacks personal jurisdiction over them. Because Defendants have sufficient minimum contacts with Minnesota, the underlying action arises out of these contacts, and it is reasonable for Defendants to defend themselves in Minnesota, the Court will deny Defendants' Motion to Dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. FACTUAL BACKGROUND

The Co-Op is a grain farmers' cooperative based in Ashby, Minnesota. (Notice of Removal, Ex. B ("1st Am. Compl.") ¶ 1, Aug. 29, 2019, Docket No. 1.) The Co-Op purchases grain from local farmers, who are also owners of the Co-Op, and sells it to grain markets. (1st Am. Compl. ¶ 14.)

In 1989, the Co-Op hired Jerry Hennessey, a resident of Minnesota, as its general manager. (*Id.* ¶ 15.) Between June 2003 and September 2018, Hennessey misappropriated $5.4 million of Co-Op funds by writing checks from the Co-Op to himself and directly to third parties, including Defendants, to cover a variety of personal expenses, including domestic and international hunting trips for himself and his family.

(*Id.* ¶¶ 16–18.)  Hennessey disguised his fraud from the Co-Op by coding the checks as crop or feed purchases, or other ordinary expenses.  (*Id.* ¶ 17.)

Defendant Fejes is a resident of Alaska, and the sole owner of Defendant FGS, an Alaskan corporation with its principal place of business in Alaska.  (*Id.* ¶¶ 2–3; Affidavit of Samuel Fejes ("Fejes Aff.") ¶ 1, Jan. 16, 2020, Docket No. 17.)  To market its services and attract customers, Defendants have operated a booth at the annual Safari Club International ("SCI") convention in Nevada for more than two decades.  (Fejes Aff. ¶ 4.)  Defendants have also marketed their services at smaller, state-chapter SCI annual conventions, including half a dozen such conventions in Minnesota.  (*Id.* ¶ 4;  Decl. of Erik A. Ahlgren ("Ahlgren Decl.") ¶ 9, Ex. H at 95,[1] Jan. 20, 2020, Docket No. 20.)

Hennessey and Defendants' relationship began due to Defendants' marketing efforts at the 2010 Minnesota convention.  In addition to operating a booth at the event, Defendants donated a 10-day guided Mountain Goat and Bear hunt to be auctioned off at the convention.[2]  (Ahlgren Decl. ¶ 15, Ex. M at 145–46.)  At auction, Hennessey was the high bidder and went on the Alaskan hunt with Defendants in 2010.  (*Id.* at 148–149.)

---

[1] The pincites for the Exhibits attached to the Ahlgren Declaration all refer to the PDF pagination of Docket No. 20.

[2] Defendants have donated hunts for auction at the Minnesota SCI convention each of the six years that Fejes attended and he was granted an honor membership in Minnesota SCI in 2011 because of it.  (Ahlgren Decl. ¶ 8, Ex. G at 85.)

In late March or early April 2011, Hennessey called Fejes to book another Alaskan hunt. (Fejes Aff. ¶ 6.) This call occurred shortly after Hennessey spoke with Fejes at the Nevada SCI convention. (*Id.*) After receiving Hennessey's call, Fejes mailed a contract to Hennessey in Minnesota, which Hennessey executed and mailed back to Fejes along with a Co-Op check for $25,000 as a down payment. (*Id.*; Ahlgren Decl. ¶ 15, Ex. M at 160.) Both the check and contract are dated as April 5, 2011. (Ahlgren Decl. ¶ 15, Ex. M at 165, 169.) Hennessy then went on the hunt with his son-in-law, Wes Ness, in 2012. (Fejes Aff. ¶¶ 7–8.)

In 2014, Hennessey again called Fejes to book a hunt. The details regarding the 2014 hunt are similar to the 2012 hunt in many respects; Fejes sent Hennessey a contract, Hennessey signed the contract and sent a down payment, and the parties finalized trip details over email. (Ahlgren Decl. ¶ 15, Ex. M at 194–209.)[3]

Although Hennessey paid for the 2010 hunt with a personal check, he paid for the 2012 and 2014 hunts with Co-Op checks totaling $93,044. (1st Am. Compl. ¶ 18.) These checks were a part of Hennessey's years-long, multi-million-dollar fraud, which the Co-Op discovered in September 2018. (*Id.* ¶ 29.) As a result of the fraud, the Co-Op was forced to close and has been unable to pay its debts. (Ahlgren Decl. ¶ 3, Ex. B at 34.)

---

[3] Ahlgren also points to a number of other contacts Fejes has with Minnesota, including that Fejes sent his son to school in Minnesota, that Fejes travels to Minnesota to fix his plane, and that nearly two-dozen other Minnesotans have gone on hunts with FGS in Alaska. These contacts are not related to the action, however, and therefore are largely irrelevant to whether the Court has specific personal jurisdiction over Defendants.

In December 2018, the Co-Op executed an assignment (the "Assignment") with Erik Ahlgren for the benefit of the Co-Op's creditors. (*Id.*) Pursuant to Minn. Stat. §§ 576-77, Ahlgren has committed to liquidating and administering the Co-Op's assets and may pursue any claim or remedy that could be asserted by the Co-Op or by a creditor of the Co-Op. (1st Am. Compl. ¶¶ 5–7.)

## II. PROCEDURAL BACKGROUND

Ahlgren served an Amended Complaint on Defendants on July 30, 2019, seeking to void the Co-Op checks Hennessey used to pay Defendants for the 2012 and 2014 hunts. (Notice of Removal ¶ 1.) The Amended Complaint alleged three Counts: (I) Actual Fraud pursuant to Minn. Stat. §§ 513.44(a)(1), 513.47; (II) Constructive Fraud pursuant to Minn. Stat. §§ 513.45(a), 513.47; and (III) Unjust Enrichment. (1st Am. Compl. ¶¶ 31–53.)

Defendants filed a notice of removal on August 29, 2019 pursuant to 28 U.S.C. § 1332, (Notice of Removal ¶ 8), and, on January 16, 2020, filed this motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) arguing that the court lacks personal jurisdiction over Defendants (Mot. to Dismiss, Jan. 16, 2020, Docket No. 14).[4]

---

[4] During the hearing, Fejes argued for the first time that claims against him in his personal capacity should be dismissed because all of Fejes' contacts with Minnesota were due to his status as a corporate officer of FGS. Because Fejes did not raise this argument in his initial motion brief, the Court will decline to consider it at this time. *See* Local Rule 7.1(c)(3)(B) ("A reply memorandum must not raise new grounds for relief or present matters that do not relate to the opposing party's response."); *Redking Foods LLC v. Minn Assocs. LP*, No. 13-CV-0002 PJS/JSM, 2014 WL 754686, at *4 (D. Minn. Feb. 26, 2014) ("[F]ederal courts do not, as a rule, entertain
*(footnote continued on next page)*

**DISCUSSION**

**I.   STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(2) provides that a party may move to dismiss claims for lack of personal jurisdiction. "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." *Epps v. Stewart Info. Servs. Corp.,* 327 F.3d 642, 647 (8th Cir. 2003). "As long as there is 'some evidence upon which a prima facie showing of jurisdiction may be found to exist,' the Rule 12(b)(2) motion will be denied." *Pope v. Elabo GmbH,* 588 F. Supp. 2d 1008, 1014 (D. Minn. 2008) (quoting *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977)). The party seeking to establish personal jurisdiction bears the burden of proof, and "the burden does not shift to the party challenging jurisdiction." *Epps,* 327 F.3d at 647. For purposes of a prima facie showing, the Court must view the evidence in the light most favorable to the non-moving party. *Westley v. Mann,* 896 F. Supp. 2d 775, 786 (D. Minn. 2012).

**II.   SPECIFIC PERSONAL JURISDICTION & DUE PROCESS**

The Court may exercise personal jurisdiction over a defendant only if doing so (1) is consistent with the Minnesota's long-arm statute, Minn. Stat. § 543.19, and (2) comports with the Due Process Clause of the Fourteenth Amendment. *Pope,* 588 F. Supp.

---

arguments made by a party for the first time in a reply brief. This is true both in the Eighth Circuit and in this Court." (citations omitted)).

2d at 1014–15.  Because Minnesota's long-arm statue extends as far as the Due Process Clause allows, "the Court need only consider whether exercising personal jurisdiction over [Defendants] is consistent with due process." *Id*. at 1015.

"The touchstone of the due-process analysis remains whether the defendant has sufficient 'minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Although personal jurisdiction can be general or specific, this case deals only with specific jurisdiction.  For specific personal jurisdiction to be consistent with the Due Process Clause, the defendant must have purposefully created minimum contacts with the forum state itself and the litigation must arise out of those contacts.  *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014).

Keeping these considerations in mind, the Eighth Circuit requires the consideration of five factors when making a personal jurisdiction determination:

> (1) the nature and quality of the contacts with the forum state;
> (2) the quantity of the contacts with the forum state;
> (3) the relation of the cause of action to the contacts;
> (4) the interest of the forum state in providing a forum for its residents; and
> (5) the convenience of the parties.

*Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920, 922 (8th Cir. 1995) (citation omitted).  "The first two factors go primarily to whether minimum contacts exist, the third determines whether the action arises from the contacts, and the last two examine reasonableness" and are secondary to the first three primary factors.  *Ahlgren v. Muller*, No. CV 19-303 (JRT/LIB), 2020 WL 618372, at *4 (D. Minn. Feb. 10, 2020) (cleaned up).

In sum, the five-factor test boils down to three:

> (1) whether the quality and quantity of the defendants['] contacts with the forum State establish minimum contacts; (2) whether the litigation arises out of those contacts to make specific jurisdiction proper; and finally, if the first two are met, (3) whether it is reasonable, considering the interest of the forum state and convenience to the parties, to force an out-of-state litigant to defend itself in the forum state.

*Id.* (citing 13 Wright & Arthur R. Miller, Federal Practice and Procedure §1069 (4th ed.)).

### III. ANALYSIS

The Court must first examine whether the quantity and quality of defendants' contacts are sufficient to establish minimum contacts.  By attending, marketing, and donating hunts to the Minnesota-SCI conventions for over half a decade, Defendants contacts were "purposefully directed" at Minnesota with the intention of garnering business from the state.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985).  These contacts are primary and, standing alone, sufficient to establish Defendants'

minimum contacts with Minnesota.[5] Secondary contacts, including sending mail, email, and faxes into the state, contracting with Hennessey, a Minnesota resident, and accepting checks from the Co-Op, a Minnesota business, further support the Court finding minimum contacts exist. *Wessels, Arnold, & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1433 (8th Cir. 1995) (holding that although secondary contacts alone will not create sufficient minimum contacts to confer personal jurisdiction, they "remain a consideration in determining whether the defendant purposely availed himself of the privilege of doing business in Minnesota").

The next issue—whether this case arises out Defendants' contacts—is a closer question. Defendants argue that because Ahlgren is not attempting to recover funds related to the 2010 hunt that Hennessey won at the Minnesota SCI auction, the action is not sufficiently related to Defendants contacts with Minnesota. The Court disagrees. When viewing the evidence in a light most favorable to Ahlgren, it is perfectly reasonable to conclude that Defendants' solicitation of business at the 2010 Minnesota convention led to Ahlgren continuing his relationship with Defendants and purchasing the 2012 and 2014 hunts from Defendants with Co-Op checks. In other words, when viewing the evidence in a light most favorable to Ahlgren, as the Court must, the dispute arises out of

---

[5] Defendants argue that the Court may not consider any contacts Defendants had with Hennessey because the Plaintiff here is the Co-Op, not Hennessey. Defendants appear to mistake the contact analysis. The Court must examine the contacts that Defendants have with the forum state itself, not just with persons or entities that reside there. *Federated Mut. Ins. Co. v. FedNat Holding Co.*, 928 F.3d 718, 721 (8th Cir. 2019) (quoting *Walden*, 571 U.S. at 284-85).

Defendants' contacts with Minnesota. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) ("[T]here must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Having found that minimum contacts exist and that the litigation arises out of those contacts, "it is presumptively not unreasonable to require [a defendant] to submit to the burdens of litigation in the forum." *Burger King*, 471 U.S. at 476.  Defendants argue it would be unreasonable to require them to defend themselves in Minnesota because they live in Alaska and because Ahlgren's action lacks merit.  Defendants' arguments fail.  Deciding the merits of the action is not appropriate when deciding personal jurisdiction and Defendants' residency in Alaska, considering that they have sufficient minimum contacts with Minnesota, does not make defending a lawsuit here so inconvenient to be inconsistent with due process.

Having found that the quality and quantity of Defendants contacts establish sufficient minimum contacts with Minnesota, that this action arises out of those contacts, and that it is reasonable to require Defendants to litigate this action in Minnesota, the Court will deny Defendants' Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2).

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Docket No. 14] is **DENIED**.

DATED:  July 8, 2020                               _____
at Minneapolis, Minnesota.                     JOHN R. TUNHEIM
                                                                   Chief Judge
                                             United States District Court